NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220948-U

NOS. 4-22-0948, 4-22-0949 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 20, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.B. and T.B., Minors; | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Winnebago County |
| (The People of the State of Illinois, | ) | Nos. 19JA162 |
| Petitioner-Appellee, | ) | 19JA163 |
| v. | ) | |
| Tyler B., | ) | Honorable |
| Respondent-Appellant). | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, holding that the trial court's findings that the
             respondent was unfit and that termination of his parental rights was in the best
             interests of his children were not against the manifest weight of the evidence.

¶ 2    The State filed petitions alleging A.B. (born August 27, 2018) and T.B. (born

January 1, 2017), the children of respondent, Tyler B., were abused and neglected. The minors

were adjudicated neglected, and the court granted custody of the minors to the Department of

Children and Family Services (DCFS). Thereafter, the State filed petitions to terminate

respondent's parental rights as to each of the minors. After finding respondent unfit and that it

would be in the minors' best interests to terminate his parental rights, the trial court entered an

order terminating respondent's parental rights. Respondent appeals, arguing the State failed to

prove he was unfit under any of the three counts alleged in the motions to terminate his parental rights. Respondent also argues the trial court erred in finding it was in the minors' best interests to terminate his parental rights. We affirm.

¶ 3                               I. BACKGROUND

¶ 4        On April 30, 2019, the State filed petitions alleging A.B. and T.B. were abused and neglected pursuant to section 2-3 of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b), (2)(ii) (West 2018)). The petitions alleged the minors were abused in that they were both struck by the paramour of Breanna M., their mother. The petitions also alleged that both minors were neglected in that their environment was injurious to their welfare because Breanna had a substance abuse problem that prevented her from properly parenting them, they resided in a home where domestic violence was present, and each minor's sibling had been struck by Breanna's paramour. The trial court found there was probable cause to believe the children had been neglected and placed the children in the temporary custody of DCFS.

¶ 5        At an adjudicatory hearing on June 28, 2019, Breanna stipulated to one count of neglect with regard to each of the minors, and the trial court adjudicated the minors neglected. By agreement of the parties, the court entered a dispositional order finding the parents were unfit, unwilling, or unable to care for, train, or discipline the minors. The court ordered that custody and guardianship of the minors would remain with DCFS. The court also ordered the parents to remain drug- and alcohol-free and cooperate with DCFS and its contracting agencies.

¶ 6        The trial court held permanency review hearings approximately every six months. At a permanency review on June 6, 2022, the State indicated that it would be moving to change the permanency goal from return home within 12 months to substitute care pending a judicial determination on termination of respondent's parental rights. Respondent asked if he could

surrender his parental rights that day. The court stated it could set a future date for him to surrender his rights because he would need to complete paperwork first. Respondent initially stated he would not be attending any future court dates but then stated he could come to court on June 22, 2022. Respondent did not appear on June 22, 2022. His attorney indicated he had attempted to contact respondent but received no response. The court continued the matter.

¶ 7        On July 19, 2022, a permanency review was held, and respondent again failed to appear. The court found respondent had not made reasonable efforts or reasonable progress and changed the goal to substitute care pending determination on the termination of parental rights.

¶ 8        On August 10, 2022, the State filed motions for termination of parental rights as to both of the minors, which alleged respondent was unfit in that he failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare; (2) make reasonable efforts to correct the conditions that caused the minors' removal during the nine-month period from September 14, 2021, through June 14, 2022; and (3) make reasonable progress toward the return of the minors during the nine-month periods from June 28, 2019, to March 28, 2020, and from October 19, 2021, to July 19, 2022 (750 ILCS 50/1(D)(b), (m)(i), (m)(ii) (West 2020)).

¶ 9        On September 14, 2022, a hearing was held on the State's motion for termination of parental rights. Respondent failed to appear, and the court found he had "waived [his] right to be present." The trial court took judicial notice of the neglect petitions, temporary custody order, adjudicatory order, dispositional order, and permanency review orders.

¶ 10        Andrea Hernandez testified she was a caseworker at Children's Home and Aid, and she had been assigned to the minors' case since March 2022. She stated the minors came into care in 2019, after Breanna left them with her paramour and he "physically neglected" them.

She identified an integrated assessment that was completed on June 19, 2019, and it was admitted into evidence. The integrated assessment recommended that respondent (1) complete a substance abuse assessment, (2) participate in individual psychotherapy, (3) complete parenting classes, (4) demonstrate stable housing, and (5) attend all scheduled visits with his children.

¶ 11　　　　　Service plans dated June 3, 2019; October 3, 2019; March 23, 2020; April 6, 2020; September 22, 2020; March 25, 2021; September 16, 2021; and April 11, 2022, were admitted into evidence. The following "desired outcomes" for respondent were set forth in the service plans: (1) cooperating with DCFS; (2) providing adequate housing for the children; (3) maintaining a positive relationship with the children through visitation (which included the "action step" that respondent complete parenting classes); (4) achieving and maintaining an "alcohol/drug free level of personal functioning" (which included "action steps" that respondent cooperate with any drug tests requested by the agency and refrain from using alcohol and nonprescription medication); (5) having relationships free of domestic violence; and (6) obtaining and maintaining mental health stability so he could safely parent (which included the "action step" that respondent engage in counseling). The service plans indicated respondent had stable housing at different times during the case, but he did not have stable housing during the review period covered by the April 2022 service plan.

¶ 12　　　　　Hernandez testified that respondent was informed he needed to complete the services set forth in the service plans. She contacted respondent monthly by phone or text message. Respondent had been cooperative in responding to Hernandez's calls and messages since she had been assigned to the case up until very recently. Hernandez also indicated respondent had completed a mental health assessment early in the case, and there were no recommended services as a result of the assessment. However, the service plans indicated

defendant was to complete counseling. Hernandez testified respondent had been referred to counseling three times but failed to participate in counseling. The service plans showed respondent was discharged from counseling in May 2021 for nonattendance after attending only a few sessions. He began attending counseling again in late August 2021 following a second referral, but he was discharged shortly after that for failing to attend.

¶ 13    Hernandez testified that, in approximately June 2022, respondent reported he was "not doing good mentally" and was "possibly even going to hurt himself" following discussions about possibly terminating his parental rights. He stated he "couldn't do it anymore regarding the case" and that he was "done with the case." The agency referred him for a psychological evaluation after he reported wanting to harm himself, but he had not completed it.

¶ 14    Hernandez indicated respondent had completed a domestic violence assessment, and no services were recommended as a result. She stated the service plans required respondent to complete parenting classes, but he had never been referred to parenting classes due to his positive drug drops. However, the service plans, starting with the plan dated March 25, 2021, indicated respondent was no longer being asked to complete parenting classes because he had demonstrated the ability to parent during visitation. Hernandez testified the agency did not have any concerns regarding respondent's parenting, as he was doing "fairly well" during visits.

¶ 15    Hernandez testified that the service plans recommended that respondent complete substance abuse services. The service plans indicated respondent completed a substance abuse assessment in March 2020, and no services were recommended as a result. However, they also showed respondent failed to complete the majority of the drug drops he was directed to complete, and the drops he completed were positive for tetrahydrocannabinol (THC). The service plans showed respondent tested positive for THC during each of the reporting periods and never

had a negative drop. Hernandez testified respondent had been informed that he was not allowed to use cannabis while the case was pending. On one occasion, respondent indicated his phone was off when Hernandez asked him to complete a drop, but he did not otherwise give any reason for his failure to complete the drops. Hernandez stated respondent had been asked to complete an updated substance abuse assessment, but he failed to do so.

¶ 16    Hernandez stated respondent was entitled to two hours of visitation per week throughout most of the case, though he was only given visitation once per month at the time of the hearing. Hernandez indicated respondent had been consistent with visitation at times during the case and inconsistent at other times. The service plans indicated respondent had been visiting the children consistently from August 2020 through approximately December 2021. The service plan dated April 11, 2022, indicated respondent's visitation had been inconsistent during that reporting period, as respondent had three unexcused missed visits and was late to three visits. Hernandez testified that respondent had been doing "fairly well" during visits, but he needed to "continue to be more consistent." Respondent never received unsupervised visits due to his failure to participate in counseling. Respondent provided food, toys, and gifts for the children throughout the case. Hernandez stated respondent indicated in May or June 2022 that he wished to surrender his parental rights.

¶ 17    The trial court took the matter under advisement and ultimately found respondent was unfit as to all three grounds alleged in the motion for termination of parental rights. The court noted that he started out "reasonably cooperative," but his communication became more sporadic over time. The court noted respondent did not complete counseling or substance abuse services, missed or tested positive on his drug tests, and never progressed to unsupervised visitation.

¶ 18        The matter proceeded to a best-interests hearing. The State requested that the court take judicial notice of the unfitness proceedings, a court-appointed special advocate (CASA) report filed on September 14, 2022, and "a report filed on 9/30 of '22," noting that the best-interests factors were discussed on pages 13 and 14 of the report. The court did not expressly state it was taking judicial notice of these documents, but it later indicated it "[took] note" of the two reports and considered them in reaching its best-interests determination.

¶ 19        The CASA report filed September 14, 2022, stated that T.B. and A.B. were well cared for by their foster parents, received proper medical care, and had appropriate clothing. They appeared to be attached to their foster parents and referred to them as their "parents." They referred to their foster parents' house as their home. T.B. and A.B. expressed a desire to stay with their foster parents, and their foster parents expressed a desire to adopt them. The report stated CASA had not tried to contact the minors' biological parents "based on caseworker reports of being unable to contact them."

¶ 20        The record does not contain a report that was filed on September 30, 2022. However, we presume that when the State asked the court to take judicial notice of this report, it was referring to a Children's Home and Aid report filed on October 3, 2022, as the best-interests factors were discussed on pages 13 and 14 of that report. The report stated the minors had lived with their foster parents since October 2021. The foster parents provided the minors with food, clothing, and shelter, and the minors were comfortable in the foster home. The report indicated the minors were too young to fully understand and express their wishes concerning where they wanted to live, but they were bonded with their foster parents. The report stated respondent had been unable to provide for all the minors' needs consistently, though he had been attending visits and demonstrated his affection for the children during visits.

¶ 21 The trial court found the State had met its burden at the best-interests stage by a preponderance of the evidence and ordered that respondent's parental rights be terminated. The court noted respondent was not present at the hearing to advocate for his parental rights. It found that returning the children home was a "dim prospect," as respondent had been found unfit and "appear[ed] to have withdrawn from this matter." The court stated it also "[took] note of the two reports which indicate that the children have been fully integrated into [their foster] family." This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23 On appeal, respondent argues the State failed to prove he was unfit under any of the three grounds of unfitness alleged in the motion to terminate his parental rights, and the trial court erred in finding it was in the minors' best interests to terminate his parental rights.

¶ 24                                    A. Unfitness

¶ 25 We first address respondent's argument that the State failed to prove he was unfit under any of the three grounds of unfitness alleged in the motion to terminate his parental rights—namely, that he failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare; (2) make reasonable efforts to correct the conditions that caused the children's removal during a nine-month period after the adjudication of neglect; and (3) make reasonable progress toward the return of the children during a nine-month period after the adjudication of neglect. Specifically, respondent argues the State's evidence of unfitness was insufficient as to all three grounds because it relied exclusively on his use of cannabis and he completed all necessary services except for the ones that were withheld due to his cannabis use. He also argues the trial court erred in finding him unfit on the basis that he failed to make reasonable efforts to correct the conditions that were the basis for the minors' removal because

the services he was requested to complete were not related to the conditions that were the basis for the minors' removal.

¶ 26    Proceedings to terminate parental rights are governed by the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2020)) and the Adoption Act (750 ILCS 405/1-1 *et seq.* (West 2020)). Section 2-29 of the Juvenile Court Act (705 ILCS 405/2-29 (West 2020)) sets forth a two-step process for terminating parental rights involuntarily. *In re J.L.*, 236 Ill. 2d 329, 337 (2010). First, the State must prove by clear and convincing evidence that a parent is unfit under one or more of the grounds set forth in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2020)). 705 ILCS 405/2-29(2) (West 2020); *J.L.*, 236 Ill. 2d at 337. If the court determines the parent is unfit, it then determines whether termination of parental rights is in the best interests of the child. 705 ILCS 405/2-29(2) (West 2020); *In re D.T.*, 212 Ill. 2d 347, 352 (2004).

¶ 27    Pursuant to section 1(D)(b) of the Adoption Act, a ground for finding a parent unfit is the parent's "[f]ailure to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." 750 ILCS 50/1(D)(b) (West 2020). "Since this language is in the disjunctive, any of these three elements may be considered on its own as a basis for unfitness: the failure to maintain a reasonable degree of interest *or* concern *or* responsibility as to the child's welfare." (Emphases in original.) *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004). A determination as to whether a parent has maintained a reasonable degree of interest, concern, or responsibility requires consideration of a parent's circumstances. *In re M.I.*, 2016 IL 120232, ¶ 27. "[I]n evaluating a parent's conduct, a trial court must focus on the reasonableness of [their] efforts and not on their success." *In re E.O.*, 311 Ill. App. 3d 720, 726-27 (2000). However, a parent is not fit merely because he or she has demonstrated some interest or affection for his or her children; the parent's interest, concern, and responsibility must be reasonable. *Id.* at 727.

¶ 28    "Noncompliance with an imposed service plan, a continued addiction to drugs, a repeated failure to obtain treatment for an addiction, and infrequent or irregular visitation with the child have all been held to be sufficient evidence warranting a finding of unfitness under [section 1(D)(b) of the Adoption Act]." *Jaron Z.*, 348 Ill. App. 3d at 259; see also *M.I.*, 2016 IL 120232, ¶ 38 ("[A]n unwillingness to cease using drugs represents a lack of responsibility."); *In re S.J.*, 233 Ill. App. 3d 88, 121 (1992) ("[A] parent's failure to comply with court directives and DCFS service plans is *** relevant to other criteria of unfitness, such as a lack of reasonable concern for the child's welfare ***.").

¶ 29    "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). A court's decision is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 30    Here, the trial court's determination that the State proved by clear and convincing evidence that respondent was unfit in that he failed to maintain a reasonable degree of interest, concern, or responsibility for his children was not against the manifest weight of the evidence. The evidence showed that, during the approximately three years the case was open, respondent was unable to reunite with his children due to his repeated failures to attend counseling and refrain from using cannabis. Both respondent's service plan and a court order required him to refrain from using drugs, and Hernandez testified respondent had been told he was not permitted to use cannabis while the case was open. Nevertheless, respondent never stopped using cannabis during the three years the case was open. He failed to attend most of the drug drops he was asked to complete and tested positive for THC at the ones he completed. Respondent's failure to stop

using cannabis during the case demonstrated a lack of responsibility as to the children's welfare. See *M.I.*, 2016 IL 120232, ¶ 38.

¶ 31 Respondent was also directed under the service plans to complete counseling, but he made little effort to do so. He received three counseling referrals from his caseworkers, but he was repeatedly discharged from counseling for nonattendance. Hernandez testified that respondent never progressed to unsupervised visitation with his children because he failed to complete counseling. While respondent regularly attended weekly visitation with his children throughout much of the case, the most recent service plan indicated that his attendance had become somewhat inconsistent. Also, in May or June 2022, respondent indicated to the caseworker that he wished to relinquish his parental rights and stated that he "couldn't do it anymore regarding the case." Under these circumstances, the trial court's determination that the State proved he failed to maintain a reasonable degree of responsibility as to his children's welfare was not against the manifest weight of the evidence.

¶ 32 Because we have found the State adequately proved one ground of unfitness alleged in its motion for termination of parental rights, we need not consider whether it also proved the other two grounds alleged in the motion. See *In re C.W.*, 199 Ill. 2d 198, 210 (2002).

¶ 33 In reaching our holding, we reject respondent's argument that the evidence was insufficient because the only evidence of his unfitness was his continued legal use of cannabis and his progress on all "necessary" services was "exemplary." Respondent contends the trial court erroneously considered the mere use of cannabis as grounds for termination of his parental rights, even though cannabis use is now legal in Illinois. In support of his argument, he requests that we take judicial notice of the transcript in an unrelated juvenile case, where the same trial judge allegedly stated that cannabis was not "legal in this courtroom." Respondent argues the

court did not have "the authority to ignore the enactments of the legislature in determining which substances should be legal or illegal." Respondent contends that, absent any evidence he was abusing cannabis, the court had no authority to make it "illegal" in its courtroom.

¶ 34 We decline respondent's request to take judicial notice of the transcript in the unrelated juvenile case, as it is irrelevant to the instant proceeding. We note, however, that respondent was not prohibited from using cannabis in the instant case due to any determination by the trial court that it was or should be illegal. Rather, he was prohibited from using cannabis because the court had ordered him to remain free of alcohol and drugs, and his service plan also directed him to refrain from using alcohol and nonprescription drugs. We note that, in entering a dispositional order, the court has authority to "enter any *** orders necessary to fulfill the service plan." 705 ILCS 405/2-23(3) (West 2020). In finding respondent unfit, the court did not err in considering respondent's failure to comply with its order or the directives of the service plan that he refrain from using drugs.

¶ 35 We also reject respondent's argument that his use of cannabis was the only evidence of unfitness presented by the State and his completion of all services that were not withheld due to his use of cannabis was "exemplary." The State presented evidence that respondent missed most of the drug drops he was requested to complete, failed to complete counseling, and failed to progress to unsupervised visitation due to his failure to attend counseling. Contrary to respondent's argument on appeal, the evidence at the unfitness hearing showed counseling services were not withheld from him due to his cannabis use.

¶ 36 We reject respondent's reliance on *In re Zariyah A.*, 2017 IL App (1st) 170971, and *S.J.*, in support of his argument that merely using cannabis was an insufficient basis upon

which to terminate his parental rights. We find *Zariyah A.* to be inapposite, as it involved an appeal of an adjudication of neglect rather than a proceeding to terminate parental rights. *Id.* ¶ 2.

¶ 37　　　　We also find *S.J.* to be distinguishable. In *S.J.*, the reviewing court held that the trial court erred in finding the respondent mother failed to make reasonable efforts to correct the conditions that were the basis of the removal of her child (*i.e.*, the child being born with cocaine in her system) within 12 months of the neglect adjudication. *S.J.*, 233 Ill. App. 3d at 117-18. The court noted that all her drug tests were negative for cocaine, she engaged in drug counseling, and her two most recent drug tests were negative for all drugs. *Id.* at 118. The court stated that if it were to uphold the finding of no reasonable efforts, it would effectively allow the termination of the respondent mother's parental rights because she had used cannabis after the birth of her child, which it found was not justified under the facts of that case. *Id.*

¶ 38　　　　In the instant case, unlike in *S.J.*, we have upheld the trial court's finding of unfitness on the basis that respondent failed to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare, not that he failed to make reasonable efforts to correct the conditions that led to the basis for their removal. Also, *S.J.* is factually distinguishable from the instant case. In *S.J.*, the evidence showed that, in the 12 months following the neglect adjudication, the respondent mother stopped using cocaine, engaged in drug counseling, and had two negative drug drops. *Id.* In the instant case, respondent did not have any negative drug test results during the three years the case was open. Also, as we have discussed, respondent was not found unfit solely due to his use of cannabis.

¶ 39　　　　　　　　　　　　　　B. Best Interests

¶ 40　　　　Respondent argues the trial court erred in finding that it was in the best interests of the minors to terminate his parental rights. Respondent contends the State offered no evidence

- 13 -

the minors would be better off with their foster parents than with him. Respondent further argues the State and the court were responsible for his eventual disengagement with the case and "any diminution in his relationship with his children" by "disregarding the dictate of the legislature" concerning the legality of cannabis use.

¶ 41        "At the best-interest portion of a termination hearing, the State bears the burden of proving by a preponderance of the evidence that termination of parental rights is in the child's best interest." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 31. At this stage, the focus shifts from the parent to the child, and "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The issue is whether, in light of the child's needs, parental rights should be terminated. *Id.*

¶ 42        Section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020)) provides that the trial court must consider several enumerated factors when making a best-interests determination. These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006).

See also 705 ILCS 405/1-3(4.05) (West 2020).

¶ 43    We will reverse a trial court's best-interests determination only if it is against the manifest weight of the evidence. *J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 44    Here, the trial court's finding that termination of parental rights was in the best interests of the minors was not against the manifest weight of the evidence. The reports which the court took notice of showed the children had lived in their foster home for approximately one year and were bonded with their foster parents. Their foster parents provided them with food, clothing, shelter, and proper medical care. While respondent had visited the children regularly during much of the approximately three-year period the case was open, he had not made sufficient progress in that time to receive unsupervised visitation due to his failure to attend counseling. The court noted that respondent had not appeared at the best-interests hearing to advocate for his parental rights, and it appeared he had withdrawn from the process. Under these circumstances, the facts did not clearly demonstrate the court should have reached the opposite result in making its best-interests determination.

¶ 45                              C. Plain Error

¶ 46    At the end of his brief, respondent asserts that he forfeited his objection to the trial court using his "legal use of marijuana as grounds to terminate his parental rights," but argues that we should review the issue under the plain error doctrine because the error "erode[d] the integrity of the judicial process." The plain error doctrine, which allows the appellate court to address forfeited errors where the evidence is closely balanced or the error affects substantial rights, has been applied in juvenile abuse and neglect cases. See *In re Andrea D.*, 342 Ill. App.

3d 233, 242 (2003). However, "application of the plain error doctrine to civil cases should be exceedingly rare and limited to circumstances amounting to an affront to the judicial process." *Allison v. Stalter*, 251 Ill. App. 3d 127, 131 (1993).

¶ 47 We have found that no error occurred in (1) the trial court's finding that respondent was unfit on the basis that he failed to maintain a reasonable degree of interest, concern, or responsibility for the children's welfare; (2) the court's finding that termination of parental rights was in the best interests of the minors; or (3) the court's consideration of evidence of respondent's failure to comply with the order of the court and directive of the service plan that he not use drugs. Accordingly, the plain error doctrine is inapplicable. See *People v. Bannister*, 232 Ill. 2d 52, 71 (2008) ("Having found no error, there can be no plain error.").

¶ 48 III. CONCLUSION

¶ 49 For the reasons stated, we affirm the trial court's judgment.

¶ 50 Affirmed.